Good morning. May it please the court. Eliodoro Moreno, Jr. for the petitioners. As an initial matter, I would like to address the government's jurisdictional question that it raised in its 28-J letter. We agree that Abdissalon v. Holder applies to this case and that it would seem to deny this court jurisdiction over this petition for review. However, the petitioners in Abdissalon filed a petition for panel re-hearing and re-hearing en banc, and I believe the court requested a response, but no decision has been made on whether it's going to be re-heard. So we would ask the court to hold the case in abeyance until there's a decision on whether panel or en banc re-hearing will be held, and if it is, until a decision is made on the en banc case or panel re-hearing. Is that a request without our reaching the merits of the issues before us? I would like to reach the merits of the issues before us, Your Honor, simply because if Abdissalon is changed in some manner and this court does have jurisdiction at the end to review this case, then I would like to present the merits to the panel. Now, this case must be remanded to the board for three reasons. First, the board committed legal error when it held that this court in Dinu v. Ashcroft required direct evidence that persecution was at least in part on account of a protected ground. That is not what Dinu held. In Dinu, the court in dicta simply noted that the petitioner in that case failed to present direct evidence or not even a hearsay report that the police had arrested him or harmed him because of any protected ground. Can I just ask you, Mr. Rayo, is it your position that the immigration judge incorrectly applied Dinu or the board? I believe the immigration judge and the board incorrectly applied Dinu. But, of course, the board conducted independent review aside from the immigration judge's own decision, and the board's decision is the one that the court would be reviewing here. Let me ask you this. Yes. This is hypothetically. Assume for purposes of my hypothetical that the immigration judge properly interpreted Dinu, but the board did not. And the board, therefore, dismissed the appeal or upheld the immigration judge's ruling, which correctly applied Dinu. In that case, is this an error that we can declare is simply harmless since the end result is correct? Or do we have to remand it because the board misread or misapplied our decision in Dinu? Well, this court would have to remand to the board for it to apply the proper legal standard. Again, the board did not adopt the immigration judge's decision, and thus a board must be required to apply the proper legal standard in this case. I hear your argument, and you may be totally correct. But if the board was the one that made the mistake, but the immigration judge was correct, wouldn't the decision on remand be the same? In other words, we would say to the board, please read our decision in Dinu more carefully. And then the board would say, aha, Ninth Circuit, we get it, and we affirm because the immigration judge was correct. So in this situation, what's the point of the remand? Well, Your Honor, we believe that under the court's hypothetical, if the immigration judge was correct, then, of course, the court's reasoning in the hypothetical would be sound. However, we also, our second point is that the board also committed factual error. Because the board specifically held that Ms. Cord presented no direct evidence, and, of course, must also present circumstantial evidence under Elias Zacharias, that she was persecuted at least in part on account of her imputed political opinion. But Ms. Cord did present evidence, both direct and circumstantial, that she was persecuted at least in part on that opinion. And specifically, Ms. Cord specifically testified, well, initially, I would like to point out the immigration judge limited Ms. Cord's testimony at the outset of the hearing, arguing that credibility was not an issue in that case, and simply said that she didn't need to testify about the rape that she suffered because of what it did to her whenever she recounted it. That sort of limited her testimony on some of the crucial points that I'm addressing here. But, in any event, the testimony she did give, along with her declaration and other corroborating evidence in the record, shows that she provided direct evidence, circumstantial evidence. What evidence was she not permitted to offer that directly addressed the imputed political opinion? Yes, Your Honor, and in the transcript, she testified up until she was arrested, and then how she was released. So she didn't testify, really, as to what happened during the time that she was arrested. Right before she was... No testimony as to any of the statements that the officers made while they were abusing her? She... I mean, isn't this the case where the station house officer was drunk and raped her, basically? She was drunk, Your Honor, and that's represented in her declaration. She has two declarations where she mentions this. But in her testimony, now on cross-examination, there was some discussion on cross about what was said to her, but... Let me try it again. What got left out? I mean, if it was all in front of the immigration judge, whether through the declaration or through cross-examination, I'm looking for harm or prejudice here to the petitioner. Well, Your Honor, there was really no ability to further develop exactly what was said to Ms. Kaur directly before she was beaten. Make me a proffer. Make me a proffer as to what did not get into the record because of the way that I.J. handled the hearing. Well, it didn't get in through her testimony, but in her declaration, she specifically testified... Counsel, I'm going to try it one more time. What got left out of the record that's not otherwise before the board and us? We don't know if anything was left out. So you can't identify any specific item of evidence that she was prevented from introducing before the immigration judge? That is correct, Your Honor. Let me ask you about the evidence that was before the I.J. and the BIA. It seemed a little close. I mean, she testified that she was arrested because her husband was not at home. The police were apparently targeting her husband because they suspected him of harboring a terrorist, but there wasn't anything in the record specifically indicating that they were abusing... they had arrested Kaur or were abusing her because of a political opinion imputed or otherwise. What should we look to? We have some cases like Sharma and Sangha that suggest there can be a case like this where there's not enough for imputed political opinions. Well, Your Honor, at 1060 in the record, which is the respondent's declaration, she specifically testified that the police came to her house after she had fled her house, and they were specifically asking for her and her husband, and they were specifically accusing her and her husband of being associated and involved with militants. Now, this, of course, is not just seeking information, but they thought she was involved with them. That seems to impute this political opinion on her at least supporting these militants. And I would like to reserve the rest of my time for rebuttal, Your Honor. Thank you. Very well. We'll hear from the government. May it please the Court, Dan Shea on behalf of the United States government. Just as a preliminary matter, I would also like to address the jurisdictional issue. We filed a 28-J as of Friday, and as of right now, our position on the jurisdictional question is that the Court should ultimately hold this case in abeyance pending the disposition of Abdisalaam. So you do think we should rehear Abdisalaam? Excuse me? The government's position is we should rehear Abdisalaam? Yes, that was in our response to the petition for en banc. Okay. And so if that's your position, then the appropriate thing to do would be to hold this one in abeyance until we dispose of that en banc issue. Correct. Correct. But in your briefs, you indicated we did have jurisdiction, that it was timely filed. Correct. You've now indicated to us, because this other case is going en banc, that we should not rule on that issue here. Correct, Your Honor. At this time. Right. Because the brief, I believe, was briefed in 2010. Both Pinto and Abdisalaam came out in 2011 and 2013, respectively. So at the time, those jurisdictional issues were not presented before us when we briefed the case. But now that those decisions have been issued, we agree that Abdisalaam, if it is upheld, would be controlling in this case. So as I understand it, the government's position is not that there was no jurisdiction. It's that we should wait until an en banc court makes that determination? Correct. Because we've taken a position in Abdisalaam as well. But your position, to answer Judge Allecon's question, your position in Abdisalaam is that it's incorrectly decided, right? Correct. And that there is jurisdiction, even though we said there was not. Correct. Because that was the position that the government was taking in front of the three-judge panel. So just so I understand, is it the government's position that if Abdisalaam is reheard en banc, if the en banc court agreed with the government, then we would have jurisdiction in this case? Yes. Okay. But we also agree that because Abdisalaam is still an en banc, we should discuss the merits of this particular case in case the jurisdictional issue is not there in this case. All right. So turning to the merits of this case, this case centers on one incident in 2002 in which a petitioner was arrested, questioned, and assaulted by the police. This case turns on two key relationships, specifically the relationship between the petitioner, her husband, and the suspected terrorist, a man named Ainees. Because of this relationship, these relationships, the police investigated the petitioner and her husband using methods that we would all agree are heavy-handed and deplorable. And at the outset, it should be noted that given this deplorable treatment that she received, she was granted withholding of removal under the cap. So because of that, she doesn't face deportation to India any longer. The sole question before the court this morning isn't whether she'll be removed to this country where she was horribly treated. The sole question before the court is whether or not the treatment she experienced was on account of her political opinion. That can change, though, can it not? I've always been curious about what the effect of granting withholding of removal is. If country conditions change, she can then be removed, and she can't adjust status to a lawful permanent residence or seek citizenship while she's correct. She's not going to seek citizenship. So you're kind of in limbo, pending world developments. Right. But from what I understand with withholding removal under the cap, the most likely outcome, if she is removed, which is generally unlikely to begin with, but even if she is, it would be to another country. It would not be to her original country of origin. For all intents and purposes, she does not face deportation to India. Several factors counsel against why she was not persecuted on account of her political opinion. This case is very similar to Dinu in many ways. Like in Dinu, there is no direct evidence that the persecution suffered by the petitioner was on account of her political opinion. Judge Solomon, as you noted, there wasn't any direct testimony on why she experienced what she experienced at the station house. But there was some testimony on why she was treated the way she was. So there was testimony that she was arrested because her husband wasn't at home, so they were looking for her husband. If we credit her statement that the officers said or accused Dinu and her, or excuse me, Kaur and her husband of harboring this militant, is that enough to establish the imputed political opinion? Not in this case, Your Honor, because in this case, if you actually read the record, and I was able to look at it pretty carefully, her testimony wasn't that they even thought she was a terrorist. If you read the record, the merits hearing, what she testified was they kept asking her, where is he? Are you a terrorist? Are you associated with him? They didn't accuse her of being a terrorist, you are a terrorist. They said, are you a terrorist? And it wasn't until the very end of her merits hearing where she says, the police are still looking for my husband and this man named Anees, and by now they actually do believe he is a terrorist. So it wasn't until much later, at the outset, they were simply looking for information. If you read the record, both her testimony about what they asked her, and even with her husband, was that the police were on shore. What they really cared about was the man named Anees, who was suspected. Well, there is, she makes one statement that I guess the SHO said her family is a traitor, her family is traitorous, words to that effect. That comes pretty close to an imputed political opinion, doesn't it? I would disagree, Your Honor. I don't think it's clear what that means, that her family is traitorous. It could be, I mean, it's unclear how that speaks to her politics. So is your position then that the state of the record is such that we cannot declare that substantial evidence compels the opposite result? Is that your bottom line? Even if one can look at the record and say, well, it's possible that it was a political opinion, because this is up from the administrative agency, the record must show that no reasonable person can look at this and conclude that she was not persecuted because of her political opinion. And there's not enough evidence to support that. In fact, there's also further evidence between the station house officer and the petitioner where he said to her, well, her husband has relations with Muslims and she knows everything. So again, it further supports the fact that this is a matter of relationships. She testified that she has a 10th grade education. She never testified to being involved in politics in any way or having any political opinions. This is simply because of her relationship with her husband, who had a relationship with Amy's. And that's what this case comes down to. And to draw the link between that and then a political opinion, and that was the reason. Are you saying that she could be persecuted because of her relationship with her husband? What I'm saying is that her relationship with her husband is significant insofar as they believe she has information. Now, if they hated her husband because he was political, and then they impute that political opinion to her, then certainly that could be political. Did the board look at those facts and make a determination? We can't decide those facts. But did the board decide? The board concluded that it was based on that the entire thing was a police investigation. So the board did not... It was of the other person who they were looking for. Right. And if she was a possible witness, then that's all. Right, that's all. And... So I think what I heard you say was, so the argument was because she was his wife, she must have known more than she was willing to say about her husband's activities. Or where... If her husband knows where Aines is... She should know that. She should know where he is. Okay, all right. I think I understand the distinction. So, again, this case simply comes down to a matter of evidence. And the evidence here isn't there. Indeed, the facts, I would argue, are far more compelling, because there the petitioner was part of an overthrown communist regime. And that can give rise to much stronger inference that he held political views, such as supporting the overthrown dictator. And even there, in rejecting that, this court held that there must be direct evidence that the police at least intimated that... I don't remember how many times they arrested him, but they arrested him multiple times. They tried to get him to sign a confession. And even there, because they never said anything about his communist views, they held that there was not sufficient direct evidence. And I would argue here there was only one arrest. And they never intimated there, either, whether or not her persecution was on account of her political opinions. It's not clear to me how the word direct is being used in your argument and what the board said. There are two kinds of evidence. There's direct. There's circumstantial. Was there circumstantial evidence in this case which the board made no findings on with reference to the reason for what happened to her was her relationship to her husband? To answer your first question, I don't think there is any direct evidence in this case. I think it's clear that... But circumstantial evidence is also admissible. Right, right. And so to answer your second question, I think the board did make a conclusion in the circumstantial evidence and simply concluded that, no, that wasn't enough. It didn't specifically say that... It didn't specifically talk about each piece of circumstantial evidence. Well, didn't it say it isn't enough where you have direct evidence that they were investigating a crime? I'm sorry, Your Honor, I don't... Didn't the board conclude that however deplorable the conduct was, they had direct evidence that they were investigating a crime and that's it? Right, Your Honor. We can't go into the basis for the persecution. I'm sorry, I don't understand. So the question is... It appears from reading what the board said that they said, because there's direct evidence they were investigating a crime, regardless of how they treated her, that they cannot go into the question about her relationship, for example, with her husband. Right. I think I understand your question now, Your Honor. So I think it relates to Judge Tolman's question earlier. So if the I.J. correctly applied DENU and the board statement overstated what DENU actually held, is it harmless error or should it be remanded because the board overstated DENU possibly? Do you agree the board overstated? I think the board basically affirmed the I.J.'s decision and added its own comments on what DENU held. And I don't think the issue on whether the board overstated DENU is really central in this case. I think the central issue is the board was making a statement after it was already addressing whether the I.J. erred, and it was basically holding the I.J. did not err. And in doing so, it made some comments as well. So if Your Honors have no further questions. Thank you. Ms. Moreno, you've got a couple minutes left. Yes. Yes, Your Honor. I quickly want to point out my third reason this case should be remanded. It's because the board failed to consider Ms. Kaur's argument that it made before it that she was also persecuted, at least in part, on accounts of her particular social group, which is her family relationship. This is not proper rebuttal. If you didn't raise it in your opening argument, you got it in the brief. But it's unfair to the government. Unless you want me to give them some rebuttal so that they can address this one. So then I'll address a couple of points. First off, this case does greatly affect the petitioners in this case because it's not just Ms. Kaur, but also her daughters who are derivatives on her application. And, of course, they do not get any status if asylum is not granted to Ms. Kaur, and they are currently in limbo. I looked at AR 1016, which you suggested that they accused, the police accused her of being involved. And based on, I had looked at this, that they accused the husband of associating with militants, and it mentions again where is your husband. So what language were you specifically looking at? I may have missed that. Yes, Your Honor. The very last sentence says the police is accusing that my husband and I had joined the militants. On paragraph 14, on page 1061, excuse me, Your Honor. I apologize. It's on 1061. And I would also draw the court. So this is the hearsay about what the police told others? Yes. That is correct. Okay. And then also, there's also on page 275, which goes back to the court's questions of the respondent, where during her testimony, she specifically testified that the police asked her about her involvement with her in-laws and her family who were involved in anti-government activities. The respondent is fashioning this case as simply they were asking questions about her husband, but that simply is not the case. Here, they were also asking about her family. They called her family traitors, and they also asked about what her family's activities were and their involvement with anti-government activities. Maybe this distinction is too subtle for immigration law, but asking the question and eliciting incriminating evidence are two different things. I mean, the fact that the officer asked the question doesn't necessarily suggest that the police have any evidence to substantiate the question. They asked the question in the hope of getting an admission, which apparently they didn't get from Mrs. Cowher because she wasn't involved in any of those sorts of things. Well, yes, and then when they didn't get the information that they believed she had, they went ahead and beat her and then raped her. But then all that evidence seems to be... That's the issue that the agency had to resolve. In other words, what was the purpose of the arrest and the interrogation? That's correct, Your Honor. And then I.J. made the determination that, as I read the record, that there was no link to imputed political opinion, that what was done to her was totally, you know, it's torture within the meaning of cat, but it wasn't on account of a protected ground. Yes, and we would disagree with that contention for the reasons cited. Thank you, Your Honor. Okay, thank you. The case is submitted.
judges: Alarcon, Tallman, Ikuta